**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ASHLEY SETTIMI, on behalf of herself and all others similarly situated, | Civil Action No.: 1:23-cv-00093 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| PARKING REVENUE RECOVERY SERVICES, INC., | **JURY DEMANDED** |
| Defendant. | |

1.      Plaintiff brings this action on behalf of himself and all other vehicle owners who were unlawfully mailed parking citations by Defendant Parking Revenue Recovery Services, Inc. ("Defendant" or "PRRS")  and  whose personal information PRRS illegally obtained through knowing violations of federal law.

## INTRODUCTION

2.      PRRS is a domestic corporation that operates over 800 parking facilities throughout the Country.  PRRS boasts that it issues over 100,000 violation notices per month, and that it is "a leading provider of fully integrated parking compliance, and access monitoring services" and "one of the first companies to automate parking monitoring and compliance programs using a software-based solutions called ARC."[1]

3.      According to PRRS's website, PRRS was one of the first companies to automate monitoring and compliance programs using software-based solutions. PRRS's

---

[1] https://prrsparking.com/ (last accessed January 10, 2024)

website states that PRRS operates in "all property types including commercial lots and garages, municipal facilities, college and university facilities, airports, hospitals, commercial properties, and residential buildings[,]" and that the goal of PRRS is to help clients "maximize the value of their properties."[2]

4.        The violation notices at issue are designed to look like official parking tickets and contain legal language demanding that the vehicle owner pay immediately, threatening that "[a]fter 30 days from the date of the notice, the account will be considered in default and assigned to a debt collector." They further warn that the targeted vehicle "may be subject to towing or booting, and the owner may be liable for additional costs and fees, to the extent permitted by law."

5.        In order to mail its extortionate violation notices, PRRS must first determine the private address at which the vehicle owner resides.  In order to find this private personal information, PRRS illegally obtains it from official motor vehicle records, in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*

6.        The DPPA requires PRRS receive the prior express written consent of all consumers prior to engaging in this blatant invasion of their privacy. 18 U.S.C. § 2721(b)(13).

7.        PRRS did not receive prior express written consent from Plaintiff nor any Class Member prior to obtaining their private personal information from official motor vehicle records.

8.        PRRS knowingly, willfully, or recklessly engaged in this invasion of

---

[2] https://prrsparking.com/company.html (last accessed January 10, 2024)

Plaintiff's and Class Members' privacy by obtaining, disclosing, and/or using Plaintiff's

and the Class Members' personal information for a purpose not permitted by the DPPA.

As a result, Plaintiff seeks to represent a class of persons who were mailed such violation

notices and whose personal information was illegally obtained by PRRS in violation of

the DPPA.

9.      Plaintiff seeks, on behalf of herself and each member of the proposed Class,

statutory damages under the DPPA in the amount of $2,500, reasonable attorney's fees

and other litigation costs reasonably incurred, and such other equitable relief as the court

determines appropriate, including injunctive relief in the form of an order prohibiting

Defendant from obtaining, using and/or disclosing personal information obtained from

state departments of motor vehicles ("DMV") in order to send surprise bills through the

mail and profiting therefrom.

## BACKGROUND OF THE DPPA

10.      In 1994, Congress enacted the DPPA in order to protect the personal

information of drivers in the United States. This federal law was designed to address

growing concerns about the misuse of personal data collected by DMVs. By regulating

the disclosure and use of personal information contained in motor vehicle records, the

DPPA ensures that this sensitive data is only accessible for legitimate and specified

purposes. The DPPA's primary goal is to safeguard individuals' privacy and prevent the

invasion of that privacy and the exploitation of personal information for purposes such as

solicitation, marketing, and identity theft.

11.      Historically, the DPPA was a response to several high-profile incidents

3

where personal information obtained from DMV records was used for harmful purposes,

including intimidation and harassment. The act was championed by Congress as a

necessary step to enhance privacy protections in an increasingly data-driven society. Its

passage marked a pivotal moment in the evolution of privacy law in the United States,

setting a precedent for subsequent legislation aimed at protecting personal data.

12.      In creating special protections for data in this context, the DPPA responded to

concerns over the personal information captured and retained by State DMVs. Congressional

testimony in 1993 noted the potential privacy threats directly related personal safety concerns from

disclosure of personal information held by DMVs: "[u]nlike with license plate numbers, people

concerned about privacy can usually take reasonable steps to withhold their names and address[es]

from strangers, and thus limit their access to personally identifiable information" in other records.

See 140 Cong. Rec. H2523 (daily ed. Apr. 20, 1994) (statement of Rep. Edwards); ibid. (statement

of Rep. Moran).

13.      The effect of the DPPA has been profound, establishing a legal framework

that mandates strict confidentiality and restricts access to motor vehicle records. Under

the DPPA, personal information such as names, addresses, and Social Security numbers

cannot be disclosed without the driver's written consent, except for certain permitted uses,

such as law enforcement activities. The act imposes penalties for unauthorized access and

misuse of this data, thereby deterring potential abusers and reinforcing the importance of

data privacy. By providing a clear legal standard, the DPPA aims to reduce the risks

associated with the widespread availability of driver information.

14.      Specifically, "personal information" protected by the DPPA "means

4

information that identifies an individual," which may "include[e] an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . " that is obtained "in connection with a motor vehicle record." 18 U.S.C § 2725(3) (emphasis added); 18 U.S.C § 2721(a)(1).

15.        Pursuant to 18 U.S.C § 2724, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."

16.        The DPPA contains a private right of action for "the individual" whose personal information was knowingly obtained, disclosed, or used "for a purpose not permitted" under § 2721(b). See 18 U.S.C. § 2724(a); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title.").

17.        Regrettably, there are still occasions where unscrupulous actors like PRRS disregard the DPPA and abuse the personal information contained in DMV records for illicit purposes. This is one such case. PRRS's entire business model is based on flouting the DPPA and abusing official motor vehicle data to harass and extort consumers. Plaintiff's Complaint seeks injunctive relief that would require PRRS to cease this unlawful conduct and compensate consumers whose privacy rights have been blatantly violated.

## JURISDICTION AND VENUE

18.        This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331.

5

19.      This Court has personal jurisdiction over PRRS because it is incorporated in

the State of Colorado, has its principal place of business in the State of Colorado and

because it regularly transacts business within the State of Colorado.

20.      Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c).

## PARTIES

21.      Plaintiff Ashley Settimi is a natural person, residing in Minneapolis,

Minnesota, and is the owner of the vehicle referenced herein.

22.      Defendant Parking Revenue Recovery Services, Inc. is a corporation

organized under the laws of the State of Colorado, with a principal place of business

located at 6025 S. Quebec St., Suite 350, Greenwood Village, Colorado 80111.

## FACTUAL ALLEGATIONS

23.      PRRS manages and operates parking facilities throughout the country.

PRRS boasts that it issues over 100,000 violation notices per month, and that it is "a

leading provider of fully integrated parking compliance, and access monitoring services."

PRRS also admits that the goal of PRRS is to help clients "maximize the value of their

properties."[3]

24.      PRRS utilizes camera-based license plate detection and recognition

technology to manage its parking lots and garages. This technology captures, stores and

transmits images of the license plates on drivers' vehicles entering and exiting its parking

facilities.

25.      As a vehicle exits a PRRS parking facility, PRRS captures an image of the

driver's license plate and then utilizes that image to determine whether the driver

---

[3] https://prrsparking.com/company.html (last accessed January 10, 2024)

associated with the vehicle tendered any payment prior to their departure. Once PRRS

determines that a fee is due, it then mails a violation notice to the registered owner of the

vehicle.

26.        In order to mail a violation notice, PRRS must first identify the vehicle

owner and obtain his or her personal information, including their mailing address. PRRS

locates this information by illegally accessing and examining official motor vehicle

records and then searching for the consumer using their license plate number. PRRS uses

this illegally obtained information to issue the citation via mail.

27.        On or around December 13, 2023, Plaintiff parked her Toyota RAV 4,

within a surface parking lot operated by PRRS and located at 620 8th Street, Minneapolis,

Minnesota.

28.        When she departed the lot, Plaintiff believed she had fully paid for parking

and that she owed no additional moneys to PRRS.

29.        Plaintiff saw no signs or notices at or around the lot.

30.        Plaintiff never provided PRRS with her name or address.

31.        Plaintiff never gave consent to PRRS to obtain any records of any kind

pertaining to Plaintiff from any third parties.

32.        By violation notice dated December 17, PRRS informed Plaintiff that she

owed PRRS the amount of $92.00.

33.        The violation notice was mailed by PRRS to Plaintiff's home address,

which PRRS illegally obtained from the State DMV.

34.        The violation notice states that, "After 30 days from the date of the notice,

7

the account will be considered in default and assigned to a debt collector. The above

vehicle may be subject to towing or booting, and the owner may be liable for additional

costs and fees, to the extent permitted by law."

35.     PRRS injured Plaintiff when it invaded her right to privacy by unlawfully

obtaining personal information about her from the State's DMV database.

36.     PRRS's invasion of privacy resulted in distress to Plaintiff.

37.     PRRS injured Plaintiff and the Class when it invaded their right to privacy by

unlawfully obtaining personal information about them from their respective states' DMV

databases.

38.     PRRS's illegal citation to Plaintiff included a photograph of Plaintiff's license

plate, taken by PRRS's on-site camera equipment.

39.     Upon information and belief, once PRRS captured Plaintiff's license plate number,

it then unlawfully queried official motor vehicle records to identify Plaintiff and acquire her

sensitive personal information without her written consent, including her home address. PRRS

then mailed its illegal citation to Plaintiff.

40.     PRRS did not receive Plaintiff's express written consent prior to accessing her

personal information, as required by the DPPA, 18 U.S.C. § 2721(b)(12).

41.     Plaintiff has never waived her right to privacy under 18 U.S.C. § 2721(d).

42.     Upon information and belief, PRRS utilized these or similar methods to send its

illegal citations and collect money from the putative Class Members who entered parking facilities

managed or operated by PRRS throughout the country.

43.     The DPPA governs the manner by which certain personal information can be

accessed or disclosed, and imposes penalties for violation of its provisions.

44.　　　Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains ..."

45.　　　Defendant is a "person" within the meaning of 18 U.S.C. 2725(2).

46.　　　Defendant accessed Plaintiff's "Personal Information" as defined in the DPPA to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

47.　　　A "motor vehicle record" is defined in the DPPA to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles…" *Id*.

48.　　　DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the use of such information for a limited number of purposes designed to promote public welfare. However, Defendant's use of official motor vehicle records to send parking citations to Plaintiff and the Class is not a permissible use of such information under the DPPA.

49.　　　Defendant's conduct as set forth above caused harm to Plaintiff and Class Members by violating their statutory rights, invading their privacy, intruding upon their seclusion, and causing distress, harassment and annoyance.

50.　　　Accordingly, Plaintiff has standing to bring her claims under the DPPA. *See, e.g.,*

9

*Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is aimed

squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone.''")

(quoting William L. Prosser, Privacy, 48 Calif. L. Rev. 383, 389 (1960)).

## CLASS ACTION ALLEGATIONS

51.     Plaintiff repeats and realleges allegations 1 through 50 above as if fully set forth

herein.

52.     Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules

of Civil Procedure on behalf of herself and on behalf of all other persons similarly situated.

53.     Plaintiff proposes the following Class definition, subject to amendment as

appropriate: "All persons who, at any time within the applicable statute of limitations, had their

Personal Information, as defined by the DPPA, obtained by Defendant from the person's motor

vehicle record(s) without Defendant first receiving the person's prior express written consent."

54.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers

and directors, and judicial officers and their immediate family members and associated court staff

assigned to this case.

55.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class

before the Court determines whether certification is appropriate.

56.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a),

(b)(2), and (b)(3).

57.     **Numerosity**. This action is appropriately suited for a class action. The members of

the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed,

believes, and thereon alleges, that the proposed Class contains thousands of individuals who have

been damaged by Defendant's conduct as alleged herein, the identity of whom is within the

knowledge of Defendant and can be easily determined through Defendant's records.

58.    **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

(a)    Whether Defendant had any permissible purpose within the meaning of the DPPA when it obtained the Personal Information of the Plaintiff and the Class;

(b)    Whether Defendant obtained the express written consent of the Class prior to accessing their Personal Information;

(c)    Whether Defendant invaded the privacy of the Plaintiff and the Class when it illegally obtained their Personal Information;

(d)    Whether Defendant obtained, disclosed or used the Personal Information of Plaintiff and the Class in violation of the DPPA and is therefore liable to Plaintiff and the Class;

(e)    Whether Plaintiff and the Class are entitled to actual, consequential and punitive damages; and

(f)    Whether Plaintiff and the Class are entitled to recovery of attorney's fees and costs.

59.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, Defendant knowingly invaded the privacy of Plaintiff and all Class Members by accessing their personal information without their express written consent. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

60.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class and

has retained competent counsel experienced in complex litigation and class action litigation.
Plaintiff has no interests antagonistic to those of the Class and Defendant has no defenses unique
to Plaintiff.

61.      **Superiority**. A class action is superior to other methods for the fair and efficient
adjudication of this controversy. The damages or other financial detriment suffered by individual
Class Members is relatively small compared to the burden and expense that would be entailed by
individual litigation of their claims against Defendant. It would be virtually impossible for a
member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him
or her. Further, even if the Class Members could afford such individualized litigation, the court
system could not. Individualized litigation would create the danger of inconsistent or contradictory
judgments arising from the same set of facts. Individualized litigation would also increase the
delay and expense to all parties and the court system from the issues raised by this action. By
contrast, the class action device provides the benefits of adjudication of these issues in a single
proceeding, economies of scale, and comprehensive supervision by a single court, and presents no
management difficulties under the circumstances here.

62.      Plaintiff seeks monetary damages, including compensatory damages on behalf of
the Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a
Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while
Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction
is issued, Defendant may continue to benefit from the violations alleged, and the members of the
Class and the general public may continue to be unfairly treated.

63.      Defendant has acted and refused to act on grounds generally applicable to the Class,
making final injunctive relief appropriate with respect to the Class as a whole.

## COUNT ONE
### (VIOLATION OF DRIVERS PRIVACY PROTECTION ACT, 18 U.SC. § 2721, ET SEQ.)

64.    Plaintiff repeats and realleges and realleges allegations 1 through 50 above as if fully set forth herein.

65.    Defendant is a "Person" as defined in 18 U.S.C. § 2725(2).

66.    Defendant invaded the privacy of Plaintiff and the Class by seeking their "Personal Information" as defined in 18 U.S.C. § 2725(3).

67.    Prior to seeking Plaintiff's and the Class Members' Personal Information, Defendant never received express written consent as defined in 18 U.S.C. § 2725(5).

68.    The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

69.    The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

70.    Defendant knowingly obtained, disclosed and used Plaintiff's Personal Information obtained from a state motor vehicle record in order to mail her its illegal parking citation, which is not a permissible purpose under the DPPA.

71.    Defendant willfully obtained Plaintiff's and the Class Members' Personal Information without their prior express written consent in reckless disregard of the DPPA.

72.    As a result of Defendant's conduct and invasion of privacy, Plaintiff and the Class have suffered harm, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under the DPPA, 18 U.S.C. § 2724(b).

13

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.      Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class Members;

B.      For an Order declaring that Defendant's conduct violated the laws referenced herein;

C.      For an Order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.      For an Order awarding actual, statutory, treble, and punitive damages as applicable;

E.      For an Order awarding pre-judgment and post-judgment interest on all amounts awarded;

F.      For injunctive relief as pleaded or as the Court may deem proper;

G.      For an accounting of all assets, funds, revenues, and profits received and retained by Defendant as a result of its improper actions;

H.      For disgorgement and restitution to Plaintiff and Class Members of all monies received or collected from Plaintiff and the Class Members and all other forms of equitable relief;

I.      For an Order awarding reasonable attorneys' fees and expenses and costs of suit; and

J.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

14

Dated: January 10, 2025                Respectfully submitted,

By: /s/ *Tyler J. Bean*
Tyler J. Bean
David J. DiSabato (*pro hac vice* forthcoming)
Lisa R. Considine (*pro hac vice* forthcoming)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: tbean@sirillp.com
Email: ddisabato@sirillp.com
Email: lconsidine@sirillp.com
*Attorneys for Plaintiff and the Proposed Class*